**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

MOONYRAM BANSRAJ, *on behalf of himself,*
*FLSA Collective Plaintiffs and the Class*,

                       Plaintiff,

        v.

METRO MANAGEMENT & DEVELOPMENT, INC.,
CARLYLE TWO LLC,
SKYLINE TOWERS 6 LLC,
KISSENA CORP.,
JOHN DOE CORPORATIONS 1 – 100,
ANDREA WOODNER, and
DAVID BARON,

                    Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, MOONYRAM BANSRAJ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, METRO MANAGEMENT & DEVELOPMENT, INC., CARLYLE TWO LLC, SKYLINE TOWERS 6 LLC, KISSENA CORP., JOHN DOE CORPORATIONS 1 – 100 ("Corporate Defendants"), ANDREA WOODNER and DAVID BARON (the "Individual Defendants," and together with Corporate Defendants, "Defendants") and states as follows:

**INTRODUCTION**

1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving; (2) liquidated damages and (3) attorneys' fees and costs.

2.     Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving; (2) liquidated damages; (3) statutory penalties; and (4) attorneys' fees and costs.

**JURISDICTION AND VENUE**

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

**PARTIES**

5.     Plaintiff MOONYRAM BANSRAJ is a resident of Queens County, New York.

6.     Defendants collectively own and operate an apartment community consisting of 5 neighboring residential buildings known as the "Carlyle Skyline Towers" as follows:

(a) 43-32 Kissena Boulevard, Flushing, NY 11355

(b) 43-44 Kissena Boulevard, Flushing, NY 11355

(c) 42-49 Colden Street, Flushing, NY 11355

(d) 43-23 Colden Street, Flushing, NY 11355

(e) 43-70 Kissena Boulevard, Flushing, NY 11355

(the "Buildings") *See* **Exhibit A**; https://whoownswhat.justfix.org/.

7.     Plaintiff was employed primarily at Defendants' 43-44 Kissena Boulevard, Flushing, NY 11355, operated by CARLYLE TWO LLC. This Building is under the control of Corporate Defendants METRO MANAGEMENT & DEVELOPMENT, INC., SKYLINE TOWERS 6 LLC, KISSENA CORP., and Individual Defendants ANDREA WOODNER and DAVID BARON.

8.     All the Buildings, including those where Plaintiff worked, are operated as a single integrated enterprise under the control of Defendants. Defendants are appropriately named in this Complaint through the theory of a "single integrated enterprise". The Buildings share: (i) common ownership by Defendants JOHN DOE CORPORATIONS 1 – 100, CARLYLE TWO LLC and SKYLINE TOWERS 6 LLC, (ii) interrelation of operations, (iii) centralized control of labor relations, and (iv) common management by Corporate Defendant METRO MANAGEMENT & DEVELOPMENT, INC. and its President and Chief Executive Officer DAVID BARON.

(a) Corporate Defendant KISSENA CORP. is the managing member of all Buildings. *See* **Exhibit B**, Multifamily Mortgage, Assignment of Rents and Security Agreements of all Buildings ("Agreements"), retrieved from the Automated City Register Information System (ACRIS) database from the New York City Department of Finance. The Borrower of the Agreements is KISSENA CORP., whose lists itself as the "Manager Member" of the Buildings.

(b) Individual Defendant ANDREA WOODER signs the Agreements as the President of KISSENA CORP. *See Id.* Individual Defendant ANDREA WOODNER indirectly manages and executes documents, including mortgage agreements, on behalf of all Buildings through KISSENA CORP. *See Id.*

(c) Individual Defendant ANDREA WOODNER applies for loans towards the Buildings. *See* **Exhibit C**.

(d) All Buildings retain Corporate Defendant METRO MANAGEMENT & DEVELOPMENT, INC. to operate and manage all Buildings. *See* **Exhibit A**. Individual Defendant DAVID BARON, as the President of METRO MANAGEMENT & DEVELOPMENT, INC., also operates and manages all Buildings. *See* **Exhibit F**. Defendants METRO MANAGEMENT & DEVELOPMENT, INC. and DAVID BARON manage the employees of all Buildings, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

(e) All Buildings currently have the same General Manager / Property Manager, Irina Svirsky, an employee of PM Defendants. *See* **Exhibit A** and **Exhibit D**.

(f) Irina Svirsky currently oversees all Buildings' daily operations, as well as Defendants' employees of the Buildings, including their superintendents, maintenance staff, and administrative personnel, which includes Plaintiff, FLSA Collective Plaintiffs, and Class Members. *See* **Exhibit D.** Defendants currently have approximately 62 employees across all Buildings. *Id.*

(g) Throughout Plaintiff's employment, Plaintiff worked for the Building operated by Corporate Defendant CARLYLE TWO LLC, but was paid by Corporate Defendant SKYLINE TOWERS 6 LLC. *See* **Exhibit E,** Copies of Plaintiff's Paystubs.

9.      Corporate Defendant METRO MANAGEMENT & DEVELOPMENT, INC. is a domestic business corporation incorporated under the laws of the State of New York, with its principal place of business located at 1981 Marcus Avenue, Suite C-131, Lake Success, NY 11042

and an address for service of process located at c/o Tane, Waterman & Wurtzel, PC, 120 Broadway Suite 948, New York, NY 10271.

10.     Corporate Defendant CARLYLE TWO LLC is a domestic limited liability company organized under the laws of the State of New York, with its principal place of business located at 43-44 Kissena Boulevard, Flushing, NY 11355 and an address for service of process at C/O METRO MANAGEMENT & DEVELOPMENT, INC., 1981 Marcus Avenue, Suite C-131, Lake Success, NY 11042.

11.     Corporate Defendant SKYLINE TOWERS 6 LLC is a domestic limited liability company organized under the laws of the State of New York, with its principal place of business located at 43-70 Kissena Boulevard, Flushing, NY 11355 and an address for service of process at C/O METRO MANAGEMENT & DEVELOPMENT, INC., 1981 Marcus Avenue, Suite C-131, Lake Success, NY 11042.

12.     Corporate Defendant KISSENA CORP. is a domestic business corporation incorporated under the laws of the State of New York, with its principal place of business located at 35 West 9th St, New York, NY 10011 and an address for service of process located at 120 Broadway, Suite 948, New York, NY 11106.

13.     Individual Defendant ANDREA WOODNER is the President of Corporate Defendant KISSENA CORP., as well as the executor and indirect manager of Corporate Defendants CARLYLE TWO LLC and SKYLINE TOWERS 6 LLC. At all relevant times, ANDREA WOODNER exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members. ANDREA WOODNER had and exercised the power to (and also delegate to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the

quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all times, employees could complain to ANDREA WOODNER directly regarding any of the terms of their employment, and ANDREA WOODNER would have the authority to effect any changes to the quality and terms of employees' employment. ANDREA WOODNER directly reprimanded any employee who did not perform his duties correctly. ANDREA WOODNER exercised functional control over the business and financial operations of the Corporate PO Defendants. ANDREA WOODNER had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees.

14.    Individual Defendant DAVID BARON is the President and Chief Executive Officer of Corporate Defendant METRO MANAGEMENT & DEVELOPMENT, INC. At all relevant times, DAVID BARON exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members. DAVID BARON had and exercised the power to (and also delegate to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all times, employees could complain to DAVID BARON directly regarding any of the terms of their employment, and DAVID BARON would have the authority to effect any changes to the quality and terms of employees' employment. DAVID BARON directly reprimanded any employee who did not perform his duties correctly. DAVID BARON exercised functional control over the business and financial operations of Corporate Defendant METRO MANAGEMENT & DEVELOPMENT, INC. DAVID BARON had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees. Individual Defendant DAVID BARON (i) "is actively involved in the oversight of the

day to day management of Metro's portfolio," (ii) "oversees the Cooperative and Condominium portfolio for Metro", (iii) "is responsible for much of the firm's strategic planning", and (iv) assists in the strategy and implementation of management issues, and serves as liaison between Metro and its clients". *See* **Exhibit F**.

15.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00 and engaged in interstate commerce. Therefore, at all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the New York Labor Law, and the Regulations thereunder.

16.     Each year, to calculate the yearly property taxes for a rental property, The New York City Department of Finance first calculates the yearly market value of the rental property based on its' yearly income producing potential, which they assess based on the number of units and the average rents of units in other nearby rental properties. The New York City Department of Finance's Property Information Portal (*see* **Exhibit G**; https://propertyinformationportal.nyc.gov.) yields the following information regarding the income producing potential of each of Defendants' Buildings during the relevant period:

| BUILDING ADDRESS | # OF RESIDENTIAL UNITS | 2018 MARKET VALUE | 2019 MARKET VALUE | 2020 MARKET VALUE | 2021 MARKET VALUE | 2022 MARKET VALUE | 2023 MARKET VALUE | 2024 MARKET VALUE |
|---|---|---|---|---|---|---|---|---|
| 43-32 KISSENA | 285 | $19,867,000 | $20,167,000 | $20,341,000 | $20,244,000 | $15,976,000 | $20,551,000 | $21,074,000 |
| 43-44 KISSENA | 285 | $20,266,000 | $20,390,000 | $19,595,000 | $20,541,000 | $16,922,000 | $21,627,000 | $21,851,000 |
| 42-49 COLDEN | 284 | $19,321,000 | $19,605,000 | $19,696,000 | $20,005,000 | $16,419,000 | $19,735,000 | $20,120,000 |
| 43-23 COLDEN | 321 | $29,298,000 | $29,564,000 | $28,935,000 | $29,198,000 | $23,563,000 | $28,507,000 | $29,161,000 |
| 43-70 KISSENA | 320 | $30,364,000 | $30,780,000 | $29,058,000 | $29,650,000 | $23,412,000 | $29,149,000 | $29,687,000 |

17.    Here, for the past six years, each of Defendants' Buildings had a market value and income producing potential of well over $500,000.00. Although these are estimations, Defendants had the ability to contest these assessments with proof of any Building actually having a lower market value than the Department of Finance's assessment. Since these values have been finalized, these values all either (i) accurately reflected Defendants' gross annual revenues, (ii) were lower than Defendants' actual gross annual revenues, or (iii) were provided directly by Defendants through the contesting process.

18.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

19.    At all relevant times, Defendants employed at least 50 employees as defined under the NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including but not limited to mechanics, handymen, porters, doormen, concierge, and maintenance and repair workers, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

21.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of

forty (40) hours per workweek. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

22.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

23.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including mechanics, handymen, porters, doormen, concierge, and maintenance and repair workers employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

24.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are

presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

26.    Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime compensation due to timeshaving, (ii) failing to provide proper wage statements per requirements of the New York Labor Law, and (iii) failing to provide proper wage and hour notices per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

27.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

28.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small

in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a) Whether Defendants employed Plaintiff and Class Members within the meaning of NYLL;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class Members properly;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d)  Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rate and overtime rate;

e)  Whether Defendants paid Plaintiff and Class Members the proper overtime compensation at the premium rate of one and one-half times the regular rate of pay, under NYLL;

f)  Whether Defendants paid Plaintiff and Class Members their wages for all hours worked;

g)  Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of NYLL; and

h)  Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members per requirements of NYLL.

## PLAINTIFF'S, FLSA COLLECTIVE PLAINTIFFS' AND CLASS MEMBERS' CLAIMS SHOULD NOT BE REFERRED TO ARBITRATION PURSUANT TO THE COLLECTIVE BARGAINING AGREEMENT

31.    Plaintiff's statutory wage claims under the FLSA and the NYLL should not be referred to arbitration pursuant to the Collective Bargaining Agreement ("CBA"). *See* **Exhibit H**. On August 1, 2024, after Plaintiff made complaints about Defendants' wage and hour violations, he was assigned a Grievance Representative from the 32BJ Service Employees International Union

CTW. CLC ("Union") to resolve the dispute. Following multiple stages of hearing, on October 16, 2024, the Grievance Board issued a decision to not arbitrate Plaintiff's claims. *See* **Exhibit I**.

32.    Under any circumstances, Plaintiff's, FLSA Collective Plaintiff's and Class Member's FLSA and NYLL claims should not be subject to arbitration. Arbitration agreements in collective bargaining agreements are evaluated under a different standard than those in ordinary contracts between an employer and an individual employee. Unlike other causes of actions, statutory claims may be subject to arbitration only if the right to pursue them in court has been explicitly waived. As the Second Circuit has explained in a case involving the same Union that is party to this CBA:

> Claims under Section 1981, Title VII, the NYSHRL, the FLSA, and NYLL may be made subject to arbitration. The issue is whether the CBA governing Plaintiff's employment contains a "clear and unmistakable" waiver of Plaintiff's right to pursue his statutory claims in federal court. In order for a mandatory arbitration provision in a CBA to encompass an employee's statutory discrimination claims, the inclusion of such claims must be unmistakable, so that the wording is not susceptible to a contrary reading.

*Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2nd Cir. 2016); *see also Skiba v. 43-43 Kissena, LLC et al* (Case no. 1:24-cv-04916) (Ordered case to proceed without a stay of discovery on the basis that "the CBA contains no mandatory provision requiring arbitration of wage claims").

33.    While broad language subjecting all possible claims to arbitration will be taken at face value in the context of *individual* arbitration agreements, courts in this Circuit and elsewhere have explained that such language does *not* satisfy the "clear and unmistakable" requirement appropriate to collective bargaining agreements:

> Arbitration clauses that cover "any dispute concerning the interpretation, application, or claimed violation of a specific term or provision" of the collective bargaining agreement do not contain the requisite "clear and unmistakable" waiver because "the degree of generality [in the arbitration provision] falls far short of a specific agreement to submit all federal claims to arbitration."

*Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461, 469-470 (S.D.N.Y. 2010) (quoting *Rogers v. New York Univ*, 220 F.3d 73, 76 (2nd Cir. 2000)).

34.     Rather, the "clear and unmistakable" standard "require[s] specific references in the CBA either to the statutes in question or to statutory causes of action generally." *Lawrence*, 841 F.3d at 84. *See also Pappas v. City of N.Y.*, 2024 U.S. Dist. LEXIS 85284, at *22 (S.D.N.Y. May 9, 2024) ("Defendant, however, has not shown that there is a 'clear and unmistakable waiver' of Plaintiffs' rights to bring their FLSA claims in federal court. The language of the 2011-2018 MOA is ambiguous and does not clearly apply here."); *Tamburino v. Madison Square Garden, LP*, 2014 NY Slip Op 895, ¶ 1, 115 A.D.3d 217, 219, 980 N.Y.S.2d 83, 85 (App. Div., First Dep't, February 11, 2014) ("The provisions in the CBA were too broad and general to demonstrate the requisite clear and unmistakable intent to submit all state statutory claims to arbitration."); *Konstantynovska v. Caring Professionals, Inc*., 2018 NY Slip Op 31475(U), ¶ 16 (Sup. Ct., NY Cty., June 29, 2018) ("Despite the presumption in favor of arbitration, it is well settled that Courts will not compel arbitration of statutory claims where the CBA in question did not effectuate a 'clear and unmistakable' waiver of those claims.").

35.     Upon receiving the CBA from Defendants, Plaintiff performed a text search in order to determine whether it contained a clear and unmistakable waiver of Plaintiff's right to pursue his statutory claims in court. The analysis did not yield any results indicating a clear and unmistakable waiver. To the extent these search terms appeared at all, it was in context entirely unrelated to arbitration and grievance resolution. Plaintiff also searched the CBA for the terms "statute" and "statutory" to determine whether the CBA waived the employee's right to litigate statutory causes of action generally or statutory wage claims generally. Here, too, the search yielded nothing that would even suggest this.

36.     The only relevant search result was a provision requiring employees to attempt to *mediate* wage and hour claims while *expressly reserving employees' right to pursue such claims in court*:

> **In the event that Employee(s) initiate litigation in a judicial forum on their wage and hour claims** without first submitting to the mediation process described in this section and the Employer seeks to enforce the requirements of this paragraph, the **Employer shall not seek dismissal of the judicial action** but may seek to have the action stayed pending the completion of the mediation provided for herein.

**Exhibit I** at 122 (emphases added)

37.     The CBA prohibits Defendants from seeking dismissal of a judicial action even in the event the employee initiates litigation prior to the mediation.

38.     This provision affirms that Plaintiff, FLSA Collective Plaintiffs and Class Members *may* litigate wage and hour claims in court, provided that the parties engage in the mandatory mediation required by the CBA. Plaintiff initiated and notified Defendants of this Action through demand letter on September 17, 2024. Plaintiff made additional efforts to reach out to Defendants, offering to comply with the mediation requirement. Plaintiff contacted Defendants' general manager and property manager, Irina Svirsky, for the contact of their legal representative, to start the mediation process. *See* **Exhibit J**. Despite Defendants' promises to have their Defendants' legal representative answer to Plaintiff's communications "in a timely fashion", weeks have elapsed since Plaintiff's first communication, and Defendants have yet to provide Plaintiff with the name of their legal representative. One can foresee the further delay Defendants would cause without the intervention of this Court.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

39.     On or around July 9, 2021, Defendants hired Plaintiff to work as a mechanic for Defendants' apartment building at 43-44 Kissena Blvd, Flushing, NY 11355. Plaintiff was employed by Defendants until on or around June 6, 2024.

40.     At all relevant times, Defendants regularly scheduled Plaintiff to work five days per week, for nine (9) hours per day from 8:00 a.m. to 5:00 p.m., with a one (1) hour meal break period each day, for a total of forty (40) hours per week. In addition to his fixed schedule, Plaintiff was required to work off-the-clock, for which he was not compensated. Defendants required FLSA Collective Plaintiffs and Class Members to work similar amounts of hours every week.

41.     At all relevant times, Defendants compensated Plaintiff weekly by check at various rates. At the start of Plaintiff's employment, Defendants compensated Plaintiff at an hourly rate of approximately $24.50 per hour. By the end of his employment, Defendants compensated Plaintiff at an hourly rate of $29.00 per hour. Defendants similarly paid FLSA Collective Plaintiffs and Class Members at similar rates.

*Plaintiff's Class-Wide Timeshaving Claims*

42.     At all relevant times, Defendants failed to pay wages for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class Members due to a policy of timeshaving, in violation of the FLSA and the NYLL.

43.     Throughout his employment, Plaintiff was scheduled to work exactly 40 hours per week. However, every day, Plaintiff was required by Defendants to stay up to 15 minutes past his scheduled end time of 5:00 p.m., to perform additional work.

44.     Plaintiff remained on the clock for this post-shift work, and did not clock out until he finished his post-shift work. However, Defendants always failed to compensate Plaintiff for any of his post-shift work performed, and instead only compensated Plaintiff for his scheduled hours.

45.     As a result of Defendants' timeshaving policy, Plaintiff was not compensated for up to 1.25 hours per week. Further, because Plaintiff always worked 40 hours per week, all of his uncompensated hours were always overtime hours.

46.     Defendants similarly failed to compensate FLSA Collective Plaintiffs and Class Members wages and overtime wages for all their hours worked due to similar circumstances.

47.     Throughout Plaintiff's employment, Plaintiff occasionally had his lunch breaks interrupted due to Defendants requiring him to return to work to assist with urgent situations. However, Defendants always failed to compensate Plaintiff for his 1-hour lunch break on the days his break was interrupted. Because Plaintiff already worked 40 hours, not including his breaks, this unpaid time was always overtime.

48.     Defendants similarly failed to compensate wages and overtime wages to FLSA Collective Plaintiffs and Class Members for all their breaks that were interrupted for work required by Defendants.

49.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members all their proper wages for all their hours worked, including the proper overtime wages for all their hours worked over forty (40) per week, in violation of the FLSA and the NYLL. Defendants' awareness and willfulness is obvious based on the fact that Defendants (i) required Plaintiff, FLSA Collective Plaintiffs, and Class Members to work over forty (40) hours per week, and (ii) limited their weekly pay to 40 hours each week.

*Plaintiff's Class-Wide WTPA Violations Claims*

50.    At all relevant times, Defendants never provided Plaintiff and Class Members with wage notices accurately stating their base rates of hourly pay. Defendants also never provided Plaintiff and Class Members with proper wage statements accurately stating their base rates of hourly pay, overtime rates, or hours worked.

51.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing accurate wage notices, stating employees' true base rate of hourly pay, to Plaintiff and Class Members at the beginning of their employment with Defendants.

52.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp*., 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp*., 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

53.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As many Courts have observed, when paired with allegations of

underpayments, the harm generated from the failure to provide such accurate notices and statements, is obvious on its face:

> Denying an employee such notices—as alleged here—can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay. The Court thus finds that, by alleging that they were not furnished the statutorily required notices, plaintiffs have asserted a concrete and particularized injury sufficient to confer standing for their WTPA wage notice and wage statement claims. Consistent with this, multiple courts in this District have exercised jurisdiction over such claims, without requiring a specific showing as to the downstream impact on the plaintiff of the non-provision of the required notice.

*Bueno v. Buzinover*, 2023 U.S. Dist. LEXIS 38154, *5-6 (S.D.N.Y. 2023) (Judge Paul A. Engelmayer) (collecting cases)

> The wage statement and notice violations alleged here are of a different class of harm than those alleged in *TransUnion* and *Maddox*. The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL." *Bueno*, 2023 U.S. Dist. LEXIS 38154, 2023 WL 2387113, at *3 (quoting *Imbarrato v. Banta Mgmt. Servs. Inc.*, No. 18 CV 5422, 2020 U.S. Dist. LEXIS 49740, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)). Specifically, the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wage they are owed. *Bueno*, 2023 U.S. Dist. LEXIS 38154, 2023 WL 2387113, at *3.

> Here, although the plaintiffs' wage statement and notice claims allege only the bare assertion that they never received their statutorily required wage statements and notices, the realization of the downstream harm the statute seeks to prevent—wage theft—is evident on the face of the pleadings. Had the sole allegation been one of failure to furnish statutorily mandated notices and statements absent the companion allegations of wage theft, plaintiffs may have encountered an issue of standing. But that is not the case here. The plaintiffs in this case allege a years-long practice of failing to pay proper wages, a pattern that was undoubtedly buttressed by their employer's failure to comply with the wage statement and notice provisions of the WTPA, which were designed to prevent this precise form of wage theft by informing employees of their pay rates and deductions.

*Bello v. Pro-Line Pumping Corp.*, 2023 U.S. Dist. LEXIS 106676, *27-29 (E.D.N.Y. 2023) (Judge Robert Levy); *report and recommendation adopted, Bello v. Pro-Line Pumping Corp.*, 2023 U.S. Dist. LEXIS 125632 (E.D.N.Y. 2023) (Judge Rachel P. Kovner).

54.    Other Courts have found standing exists where a plaintiff alleges that the failure to provide proper wage notices and statements resulted in one of the following: (i) delayed payment

of all proper wages, (ii) deprived employees of the ability to immediately contest wage calculations, (iii) misled and/or confused employees as to their hours worked or rates of pay, and/or (iv) the inaccurate or absent wage notice and wage statements prevented employees from realizing the extent of their underpayments. *See e.g., Lipstein v. 20X Hospitality LLC*, 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023) (Judge Jennifer L. Rochon) (finding standing where plaintiff alleged that the lack of wage notices and wage statements kept him from realizing that he was being underpaid and thereby preventing him from taking appropriate action to obtain the payments due to him); *Metcalf v. TransPerfect Translations International, Inc.*, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023) (Judge Edgardo Ramos) (finding standing where plaintiffs alleged that inaccurate wage notices and wage statements prevented them from knowing whether, and to what extent, they had been underpaid).

55.     Here, as in the cases described above, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay including overtime hours and overtime rates due to the wage violations described above, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, necessitated the current litigation to vindicate Plaintiff's and Class Members' rights, and delayed Plaintiff's and Class Members' retention of complete compensation. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

56.     Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the correct base rate of pay and total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours employees actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employees' wages did *not* correspond to the hours the employees actually worked. Either possibility would have allowed Plaintiff and Class Members to immediately vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury as does the delay in receiving payment caused by them.

57.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

58.     Further, the failure to accurately record hours of work on earnings statements, which Defendants is mandated by law to undertake on behalf of Plaintiff and Class Members, dissuaded reasonable workers, including Plaintiff, from raising complaints and advocating for their rights.  Defendants created these false documents with under-recorded work hours for exactly the purpose of dissuading and inhibiting employees from exercising their rights under the NYLL and the FLSA to demand their back-pay.

59.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide its wrongdoing from employees, dissuaded reasonable workers from bringing claims ending Defendants' underpayment of wages sooner, and Defendants continues to attempt to hide its wrongdoing necessitating the current litigation.  The failure to provide NYLL notices delayed Plaintiff's and Class Members' realization

of underpayments and their extent, which in turn delayed the bringing of the current litigation, and delayed payment of all proper wages owed to Plaintiff and the Class Members.

60.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements, as required by the NYLL.

61.    The direct effect of understating the number of hours an employee worked is to reduce the wages that the employee is listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee's earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

62.    The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA]

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

. . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

63.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

64.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury from both the delay in recouping payment, and in lost benefits. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security

benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

65.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

66.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and Class Members, rather than merely misreporting their incomes. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiffs and Class Members lost benefits by virtue of how Defendants reported their incomes, and how Defendants reported employees' incomes was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

67.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may

receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

68.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

69.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiffs and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2's to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

70.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members, in violation of the NYLL.

71.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class Members, in violation of the NYLL.

72.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

73.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

74.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

75.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

76.     At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of one and one-half times the regular rate of pay to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

77.     At all relevant times, Defendants had a policy and practice of failing to pay wages for all hours worked.

78.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs the proper overtime premium of one and one-half times the regular rate of pay for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

79.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

80.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

81.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation and unpaid wages, plus an equal amount as liquidated damages.

82.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

83.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

84.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

85.    At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

86.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their proper overtime compensation at rates of not less than one and one-half times their regular rates of pay for each hour worked in excess of forty (40) hours in a workweek.

87.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them wages for all their hours worked.

88.    Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiffs and Class Members, as required by the NYLL § 195(1).

89.    Defendants knowingly and willfully failed to provide proper wage statements to Plaintiffs and Class Members with every wage payment, as required by the NYLL § 195(3).

90.    Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, including overtime compensation, due to timeshaving, statutory penalties due to WTPA violations, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including overtime compensation, due to timeshaving, due under the FLSA and the NYLL;

d.  An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the FLSA;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

g.  An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.  Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

i.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiff as Representative of the Class; and

l.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: October 29, 2024                    Respectfully submitted,

                              By:      */s/ C.K. Lee*
                                       C.K. Lee, Esq. (CL 4086)

                                       **LEE LITIGATION GROUP, PLLC**
                                       148 West 24th Street, Eighth Floor
                                       New York, New York 10011
                                       Tel.: (212) 465-1188
                                       Fax: (212) 465-1181

                                       *Attorneys for Plaintiff,*
                                       *FLSA Collective Plaintiffs,*
                                       *and the Class*